IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRAIG MORRIS,**

      **Petitioner,**

      **v.**

**WARDEN, MARION CORRECTIONAL INSTITUTION,**

      **Respondent.**

**CASE NO. 2:12-cv-995**
**JUDGE EDMUND A. SARGUS, JR.**
**MAGISTRATE JUDGE KING**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Return of Writ,* Doc. No. 8, Petitioner's *Reply,* Doc. No. 9, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's requests for an evidentiary hearing and for the appointment of counsel, *see* Petitioner's *Reply*, are **DENIED**.

Petitioner's *Motion for Judgment*, Doc. No. 10, and *Motion to Correct Title*, Doc. No. 12, are **DENIED** as moot.

**Facts and Procedural History:**

This is Petitioner's fourth habeas corpus action filed in this Court.[1] In earlier habeas corpus proceedings, this Court summarized the facts and procedural history of this case as follows:

---

[1] On November 14, 2005, this Court dismissed Petitioner's initial § 2254 petition as unexhausted. *Morris v. Warden*, No. 2:05-cv-00903 (S.D. Ohio 2005). On March 24, 2008, this Court conditionally granted Petitioner's second § 2254 petition on Petitioner's claim of ineffective assistance of counsel by reason of failure to file an appeal, directing the State to release Petitioner or reinstate his appeal. *Morris v. Warden Wolfe*, No. 06-cv-00324 (S.D. Ohio 2008). On October 18, 2010, this Court dismissed – as procedurally defaulted or without merit - Petitioner's

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On the evening of December 31, 2002, a group of friends went to a club to celebrate the New Year. They drank and danced. Sometime after midnight, three members of the group, Latoya Crump, Yolanda Pedraza, and Jennifer Miles, left the club. When they got to their car in the parking lot, they noticed the front door of one of their friend's truck was open. Apparently, someone had broken into the truck. The three women approached two Columbus police officers in the parking lot to tell them about their friend's truck. The officers were working special duty that night at the club. The officers were already talking to two men: appellant and his friend, Peter Fergerson. The men were complaining to the officers that Fergerson had been stabbed inside the club during an altercation. When the women told the police about the break-in, appellant commented that stuff like that happens around here.
>
> After the conversation with the police officers, Pedraza called George Hill, a friend who was still inside the club, to report that their friend's truck had been broken into. The three women walked to Pedraza's car, got inside, and waited for their friends. Appellant and Fergerson followed the women and stood outside of Pedraza's car. Fergerson began talking to someone on his cell phone. Pedraza heard him read her license plate number to the person on the phone. Latoya Crump heard him say "[s]hould we do him or should we do the girl?" The three women remained in the car.
>
> Eventually, the women's friends came out of the club. This group included Keith Reynolds, whose truck had been broken into, Hill, Wayne Crump (Latoya's brother), Robert Briggs, Cynthia Briggs, and Tamika Jones. The three women got out of Pedraza's car and met the rest of the group in front of Reynolds' truck. Reynolds left the area to talk to the police officers. The rest of the group remained near the truck. However, Pedraza, Latoya Crump,

---

third § 2254 petition, which presented only issues related to Petitioner's reinstated appeal. *Morris v. Warden, Noble Correctional Institution*, No. 2:09-cv-00805 (S.D. Ohio 2010). Petitioner did not file an appeal from that judgment.

2

and Miles walked to Pedraza's car to leave. Miles and Latoya sat inside the car while Pedraza talked to a friend outside the car.

Moments later, appellant approached the large group of friends in front of Reynolds' truck, pulled out a gun, and pointed it at Wayne Crump. Latoya Crump saw appellant hold the gun up to her brother's head. Appellant then said something to Wayne Crump, who turned around and saw appellant holding the gun. Wayne immediately grabbed appellant's hand and began wrestling with him. After a short struggle for the gun, Crump's hand slipped from the gun, and he turned to run away from appellant. Appellant then opened fire. Appellant shot four people: Wayne Crump, Robert Briggs, Cynthia Briggs, and Tamika Jones.

Reynolds was returning to his truck with Columbus Police Officers James Cummings, and Glenn Bray. They were about 30-40 yards from Reynolds' truck when they heard the shots. Officer Bray saw appellant firing a gun in the vicinity of Reynolds' truck. Officer Bray drew his gun and repeatedly yelled at appellant to drop his gun. Appellant did not immediately drop his gun but stopped shooting and turned toward Officer Bray. After Officer Bray fired several shots, appellant finally dropped the gun, although he did not get down on the ground as directed. Officer Bray approached appellant, pushed him down to the ground, and handcuffed him. Officer Bray did not see any other individual with a gun that night.

Detective David Ramey of the Columbus Police Crime Scene Search Unit arrived at the scene of the shooting the next day. He collected three .45 caliber casings from the parking lot, some distance from Reynolds' truck. These casings had been fired from Officer Bray's weapon. Detective Ramey also collected eight 9-millimeter shell casings. He found these shell casings in front of Reynolds' truck, close to where the victims were shot. These shell casings had been fired from appellant's gun.

A Franklin County Grand Jury indicted appellant with five counts of felonious assault in violation of R.C. 2903.11.FN1 Each count also contained a firearm specification pursuant to R.C. 2941.145. Appellant entered a not guilty plea to the charges and proceeded to a jury trial. At trial, the witnesses and police officers at the scene testified to the version of events described above. Appellant and his friend, Peter Fergerson, both testified to a different version of events.

FN1. Counts 2 through 5 of the indictment were charged as felonies of the second degree, while Count 1 named Officer Bray as the victim and was, therefore, a felony of the first degree. R.C. 2903.11(D).

Fergerson explained that he and appellant went to the club with a number of friends. Once inside, Fergerson got into an altercation with some other club patrons and appellant tried to assist him. Club staff escorted those involved in the altercation out of the club. Fergerson approached one of the officers outside of the club. He asked if the officers had seen the people involved in the altercation because one of them had tried to stab him. The officers had not seen anyone. The officers looked for a wound on Fergerson's back but did not see one. Fergerson declined any medical assistance. Fergerson left the officers and started talking on his cell phone to a friend. He then saw a man in the parking lot pointing at him. Fergerson assumed the man had been involved in the fight inside the club, so he walked over to the man and started arguing with him. Fergerson pushed the man in the face. The man backed up, and then Fergerson heard two gunshots. He then heard more shots and, when he looked back, saw appellant firing a gun.

Appellant described a similar version of events. According to appellant, he and Fergerson approached police officers in the parking lot after they were kicked out of the club. Fergerson was upset about the fight and appellant tried to calm him down. When the officers provided no assistance, appellant went to his car to wait for their other

4

friends to leave the club. He was sitting in his car when he saw his friend, Fergerson, arguing with some people. Appellant's car was parked a short distance from Reynolds' truck. Fearing that these were the people involved in the fight inside the club, appellant grabbed his gun, loaded it, put it in his pocket, and walked toward his friend. Appellant saw Fergerson arguing face-to-face with a man. Fergerson pushed the man in the face, and appellant immediately attempted to pull Fergerson away. A split second later, appellant heard two gunshots. Appellant took out his gun and began shooting. Appellant never denied shooting a gun that night, but explained that he only shot in self-defense. Appellant dropped his gun once he heard the police officer yelling at him.

The jury rejected appellant's version of events and found him guilty of four counts of felonious assault and the attendant firearm specifications. The jury acquitted him of the felonious assault charge against Officer Bray. The trial court sentenced him accordingly.

The day of sentencing, however, appellant's trial counsel filed a motion for mistrial based on juror misconduct.FN2 Appellant alleged that a juror had attempted to bribe him in return for a not guilty verdict. Appellant presented an affidavit from an individual named Maceo Biggers in support of the motion. Biggers also appeared before the trial court and testified that a juror contacted friends of his, Tony Harvard and a woman only identified as Nay, and told them that the juror would find appellant not guilty in exchange for $2,000. Harvard called Biggers about the bribe, and Biggers put appellant on the phone. Biggers never talked to the juror. The trial court denied appellant's motion without explanation.

FN2. Although captioned as a motion for mistrial, the trial court considered it as a motion for new trial pursuant to Crim.R. 33.

Appellant did not originally appeal his convictions. However, he later filed a motion for leave to file a

5

delayed appeal. After this court denied appellant's motion, a federal court granted appellant a conditional writ of habeas corpus, directing the state to reinstate his appeal. In response, the state filed a motion to reopen this appeal. This court granted the state's motion and reinstated appellant's appeal. Appellant assigns the following errors:

First Assignment of Error: The court erroneously overruled appellant's challenge for cause of a juror whose views on self-defense made him biased or otherwise unsuitable to serve as a juror within the meaning of Criminal Rule 24(B)(9) and (14).

Second Assignment of Error: The court erroneously sustained the prosecution's objection to appellant'[s] excited utterance at the time he was taken into custody that another individual had a gun.

Third Assignment of Error: Appellant received ineffective assistance of counsel.

Fourth Assignment of Error: Appellant established by a preponderance of the evidence that he acted in self-defense. Consequently[, ] his convictions for felonious assault were against the manifest weight of the evidence.

Fifth Assignment of Error: Appellant established he acted in self-defense by a preponderance of the evidence. The defense having been established as a matter of law, the jury's guilty verdicts are not supported by legally sufficient evidence.

Sixth Assignment of Error: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.

Seventh Assignment of Error: Imposition of consecutive sentences based on judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant violated appellant's Sixth Amendment rights.

*State v. Morris,* 2009 WL 1444089 (Ohio App. 10th Dist. May 21, 2009). The state court of appeals affirmed petitioner's convictions,

6

>*id*., and on September 9, 2009, the Ohio Supreme court dismissed petitioner's subsequent appeal. *State v. Morris*, 123 Ohio St.3d 1408, 914 N.E.2d 205 (2009).
>
>Thereafter, on June 5, 2009, petitioner filed a *pro se* application to reopen his appeal pursuant to Ohio Appellate Rule 26(B). He asserted the ineffective assistance of appellate counsel based on his attorney's
>
>>failure and refusal to submit the claims which I instructed him to raise ... and his failure to raise the grounds which the Federal Court instructed be exhausted.
>
>*Exhibit 20 to Motion to Dismiss or Transfer*. Petitioner subsequently filed a motion to amend his Rule 26(B) application to additionally assert:
>
>>Appellate counsel delivered deficient performance by failing to raise a claim that appellant's sentence is void because the trial court failed to give the proper PRC notification pursuant to R.C. 2967.28.
>
>*See Exhibits 21, 22 to Motion to Dismiss or Transfer*. On August 20, 2009, the appellate court denied petitioner's Rule 26(B) application. *Exhibit 24 to Motion to Dismiss or Transfer*. Petitioner filed a timely appeal from that decision to the Ohio Supreme Court. *Exhibits 25, 26 to Motion to Dismiss or Transfer*.

*Morris v. Warden, Noble Correctional Institution*, No. 09-cv-00805, 2010 WL 610635 (S.D. Ohio Feb. 18, 2010). On August 29, 2009, the state appellate court denied Petitioner's Rule 26(B) application and, on November 18, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *See Morris v. Warden*, No. 09-cv-805 (S.D. Ohio 2010).

The Ohio Tenth District Court of Appeals summarized additional procedures in this case as follows:

>In 2009 and 2010, appellant requested the trial court to correct his allegedly improper sentence. Specifically, appellant alleged that the trial court failed to properly notify him of the mandatory term of post-release control ("PRC"). The state agreed that the trial court's judgment entry did not so notify appellant and that the trial

7

court should correct the deficiency. The parties disagreed, however, on the proper remedy: appellant sought a new sentencing hearing while the state argued that the court could only correct the sentence to properly impose PRC.

On May 26, 2010, the trial court held a new sentencing hearing which appellant attended via videoconference. At that hearing, the trial court imposed the same total prison sentence as it did in 2004 and notified appellant that he was subject to a mandatory term of three years of PRC. In the trial court's May 27, 2010 judgment entry, the trial court also notified appellant that he was subject to a mandatory term of three years of PRC. Appellant appealed that judgment. This court originally reversed appellant's resentencing based on the state's concession that appellant was denied his right to counsel at the hearing. *State v. Morris*, 10th Dist. No. 10AP–512, 2011–Ohio–5484, ¶ 6–7 ("*Morris II*"). The state filed an application for reconsideration of that decision, noting that it withdrew its concession before this court's decision. We agreed and, on reconsideration, overruled appellant's assignments of error. *State v. Morris*, 10th Dist. No. 10AP–512, 2011–Ohio–2226 ("*Morris III*"). We also concluded, however, that the trial court's May 27, 2010 judgment entry improperly modified appellant's original 2004 sentence instead of just adding the necessary PRC language. FN1 *Id.* at ¶ 23. Therefore, we remanded the matter to the trial court "with instructions to vacate the May 27, 2010 resentencing entry and issue a corrected entry that reinstates the sentence imposed on May 24, 2004, while adding the necessary PRC language." *Id.*

FN1. Although the total prison term remained the same, the trial court did change certain aspects of the individual sentences.

On remand, the trial court did exactly what we asked: it vacated the May 27, 2010 sentencing entry, reinstated the original prison sentence imposed on May 24, 2004, and added the necessary PRC language to its sentencing entry.[2]

Appellant appeals and assigns the following error:

The trial court erred in imposing a sentence without a hearing and outside the presence of the defendant.

. . .

---

[2] The trial court issued a new judgment entry of sentence on January 17, 2012. *Exhibit 39 to Return of Writ*.

> Appellant argues that the trial court, on remand, was required to conduct a sentencing hearing. We disagree.
>
> This court in *Morris III* made it clear what the trial court had to do on remand: vacate the May 27, 2010 resentencing entry and issue a corrected entry that reinstates the sentence imposed on May 24, 2004, while adding the necessary PRC language. *Id.* A hearing is not part of this mandate, and the trial court had no discretion to disregard our mandate or go beyond the scope of that mandate. *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 662 (1995); *State ex rel. Sharif v. McDonnell*, 91 Ohio St.3d 46, 47 (2001). The "law of the case" doctrine required the trial court to accept and apply all legal rulings of this court in all subsequent proceedings. *Id.*; *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Thus, the trial court cannot be faulted for following the instructions of this court on remand.
>
> Moreover, the trial court properly notified appellant of his mandatory PRC term at the May 26, 2010 sentencing hearing. The only flaw left for the trial court to correct was the notification in its sentencing entry. A defendant is not entitled to a resentencing hearing under these circumstances anyway. *State v. Qualls*, 131 Ohio St.3d 499, 2012–Ohio–1111, ¶ 23–24, 30. We overrule appellant's assignment of error.

*State v. Morris,* No. 12AP-127**,** 2013 WL 614543 (Ohio App. 10th Dist. Feb. 19, 2013).  On February 19, 2013, the state appellate court affirmed the judgment of the trial court.  *Id.*  Petitioner did not apparently file an appeal to the Ohio Supreme Court.  Meanwhile, however, on December 9, 2011, Petitioner filed another application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  *Exhibit 33 to Return of Writ.*  The state appellate court denied that application as untimely and improper, concluding that the application was a challenge the effectiveness of appellate counsel during the reinstated appeal ordered by this Court.  *Exhibits 34, 35 to Return of Writ*.  On July 25, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *Exhibits 37, 38 to Return of Writ*.

On October 26, 2012, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He asserts the following claims, recited *verbatim*:

9

>1. The trial court ignored, modified, and/or changed mandate law thereby violating not only their oath of office, but due process law.
>
>2. The trial court ignored, modified, and/or changed mandate law thereby violating not only their oath of office, but violating equal protection of the law.
>
>3. Counsel at trial for re-sentencing, and counsel appointed for appeal have both violated the guarantee to effective assistance of counsel by failing to protect both due process rights and the equal protection of laws.
>
>4. The trial court and/or appeal court on direct appeal review denied my access to the courts.
>
>5. Defendant was denied his right to direct appeal.

Respondent argues that Petitioner's claims are moot, fail to present issues appropriate for federal habeas corpus relief, have been waived, or are without merit.

**Successive Petition:**

Although Respondent does not raise the issue, this Court must first determine whether it has the jurisdiction to consider this action – Petitioner's fourth since his original conviction in the Franklin County Court of Common Pleas. *See* 28 U.S.C. § 2244(b). However, not all subsequent petitions relating to the same conviction or sentence are considered successive. *Stewart v. Martinez–Villareal*, 523 U.S. 637 (1998). In the petition presently before the Court, Petitioner challenges only his re-sentencing proceedings. Specifically, Petitioner claims that he was entitled to a *de novo* sentencing hearing, that he was denied the effective assistance of counsel at re-sentencing and on the appeal from his re-sentencing, and that he was denied the right to appeal that re-sentencing. Thus, all of the claims currently before the Court relate to Petitioner's re-sentencing and could not have been raised in any of his earlier petitions. *See Magwood v. Patterson*, 561 U.S. --, 130 S.Ct. 2788 (2010)(numerically second habeas corpus petition challenging re-sentencing that occurred after the conditional grant of a petition for a writ

of habeas corpus did not require the authorization of the Court of Appeals prior to consideration by the District Court). Under these circumstances, this action is not a successive petition within the meaning of 28 U.S.C. § 2244(b) and this Court may consider Petitioner's current claims without prior authorization of the Court of Appeals.

**Claims One and Two:**

Claims One and Two address Petitioner's January 2012 re-sentencing. Petitioner appears to argue that, pursuant to the holding of the Ohio Supreme Court in *State v. Singleton*, 124 Ohio St. 3d 173 (2009),[3] he was entitled to a *de novo* sentencing hearing - and the opportunity raise yet additional claims - and that the state courts' refusal to provide such a hearing violated *Singleton*'s mandate and denied Petitioner due process and equal protection.

These claims raise only an issue of state law and therefore fail to present a basis for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 18 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v.. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)). It is only where the error

---

[3]In *Singleton,* the Ohio Supreme Court held that, "[f]or criminal sentences imposed prior to July 11, 2006, in which a trial court failed to properly impose postrelease control, trial courts shall conduct a de novo sentencing hearing in accordance with decisions of the Supreme Court of Ohio." *Id.*, syllabus, ¶ 1. In *State v. Fischer*, 128 Ohio St. 3d 92 (2010), however, the Ohio Supreme Court later held that "[a] sentence that does not include the statutorily mandated term of postrelease control is void . . . [but] [t]he new sentencing hearing to which an offender is entitled . . . is limited to proper imposition of postrelease control." *Id.*, syllabus, ¶¶ 1, 2.

resulted in the denial of fundamental fairness that federal habeas relief will be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988).

**Claim Three:**

Claim Three raises somewhat similar issues: Petitioner alleges that he was denied the effective assistance of counsel, both at re-sentencing and on the appeal from that re-sentencing, because his attorneys failed to raise "issues . . . properly, pursuant to mandate, raised at re-sentencing." *Petition*. This claim is without merit.

A claim of ineffective assistance of counsel requires the following showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). An error by counsel, even if professionally unreasonable, does not warrant habeas relief if the result of the proceedings would not have been different. *Id*. at 694.

The state appellate court addressed this claim as follows:

> The arguments supporting [this claim] presuppose the idea that he was entitled to a de novo resentencing hearing. . . . [T]he scope of the resentencing hearing was limited to the correct imposition of PRC. The extent of this appeal and our review is equally limited. *Fischer* [128 Ohio St. 3d] at 99. According to the transcript from the hearing, appellant had the opportunity to confer with counsel before the hearing commenced. Counsel represented appellant with respect to P[ost]R[elease]C[ontrol]. Appellant fails to argue to the contrary. Additionally, appellant addressed the court on his own behalf in several other regards. Moreover, appellant suffered no prejudice by any purported errors his counsel may have made during the resentencing hearing.

*State v. Morris*, 2011 WL 1782201, at *4-5. The state appellate court nevertheless remanded the matter to the trial court, concluding that the trial court had improperly modified Petitioner's sentence:

> [I]n its May 27, 2010 resentencing entry, the trial court improperly modified appellant's original sentence. It had no authority to do so and instead should have imposed the same sentence that was imposed in the May 24, 2004 entry, along with the necessary PRC language. *See State v. Robb*, 1st Dist. No. C–100678, 2011–Ohio–4647, ¶ 6. We therefore remand this matter with instructions to vacate the May 27, 2010 resentencing entry and issue a corrected entry that reinstates the sentence imposed on May 24, 2004, while adding the necessary PRC language.

*State v. Morris,* 2011 WL 1782201, at *10. Petitioner filed a timely notice of appeal from this decision to the Ohio Supreme Court, which dismissed that appeal. *State v. Morris*, 132 Ohio St.3d 1485 (2012). After the trial court corrected its judgment entry of sentence, Petitioner appealed that judgment. However, he did not raise a claim of ineffective assistance of counsel; as noted *supra*, Petitioner argued only that the trial court had erred in imposing sentence without a hearing and outside his presence. *See State v. Morris*, 2013 WL 614543. The state appellate court affirmed the trial court's judgment and, as noted *supra*, Petitioner apparently did not file an appeal from that judgment.

Respondent suggests that Petitioner's claim of ineffective assistance of counsel in this regard might be unexhausted because Petitioner may still pursue a delayed appeal to the Ohio Supreme Court. *Return of Writ*, PageID #44, n.6. This Court disagrees. Petitioner raised a claim of ineffective assistance of counsel in the December 9, 2011 application to reopen his appeal pursuant to Ohio Appellate Rule 26(B), *Exhibit 33 to Return of Writ*, and presented the same claim to the Ohio Supreme Court, *Exhibits 37, 38 to Return of Writ.*

13

However, Petitioner's claim may be procedurally defaulted in light of the dismissal of his December 9, 2011 Rule 26(B) application as untimely and improperly filed:

> [I]n his December 9, 2011 application for reopening, defendant asks this court to reopen his appeal ("second application"). As is clear, however, defendant is not requesting a reopening with respect to post-release control. Rather, in his second application, defendant presents the same arguments he raised in his first application. Specifically, he argues: (1) that his sentence is contrary to law because it violates the mandate of *Blakely;* (2) that the jury was improperly influenced and biased because of an alleged bribery attempt; (3) that he was denied a fair trial; and (4) that there was insufficient evidence supporting his convictions. Based upon the arguments presented in his second application, defendant is clearly asking us to reopen case No. 05AP-1139, which we resolved on May 29, 2009.
>
> However, more than 90 days passed between May 29, 2009 and December 9, 2011, the date upon which defendant filed his second application. Defendant has failed to show good cause to excuse his untimely application. Indeed, nowhere in defendant's application is timeliness even mentioned. We also note that defendant's second application exceeds the page limitation for such filings.
>
> We reject defendant's second application based upon these deficiencies. More importantly, however, we reject defendant's second application because we have already considered and rejected these same substantive arguments during our review of defendant's direct appeal. *See Morris I and Morris II.*
>
> Based upon the foregoing, we deny defendant's December 9, 2011 application for reopening.

*Exhibit 34 to Return of Writ*.

A habeas petitioner is required to fairly present his federal constitutional claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478,

485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Here, Petitioner failed to comply with state court rules by failing to file his second Rule 26(B) application within the required ninety day period. The state appellate court explicitly enforced this procedural rule by denying Petitioner's second Rule 26(B) application as untimely. The United States Court of Appeals for the Sixth Circuit has held that this time limit constitutes an adequate and independent state ground upon which to foreclose review of a petitioner's federal claims. *See Wilson v. Hurley*, 382 Fed.Appx. 471, 476, unpublished, 2010 WL 2587942 (6th Cir. June 28, 2010). Further, Petitioner has failed to establish cause for this procedural default. *See generally Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Finally, this is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

However, the Court also concludes that Claim Three is without merit.

In rejecting Petitioner's final appeal from his re-sentencing, the state appellate court reiterated that Petitioner had no right to address any issues aside from the imposition of post release control:

> This court in *Morris III* made it clear what the trial court had to do on remand: vacate the May 27, 2010 resentencing entry and issue a corrected entry that reinstates the sentence imposed on May 24, 2004, while adding the necessary PRC language. *Id*. A hearing is not part of this mandate, and the trial court had no discretion to disregard our mandate or go beyond the scope of that mandate. *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 662 (1995); *State ex rel. Sharif v. McDonnell,* 91 Ohio St.3d 46, 47 (2001). The "law of the case" doctrine required the trial court to accept and apply all legal rulings of this court in all subsequent proceedings. *Id*.; *Nolan v. Nolan,* 11 Ohio St.3d 1, 3 (1984). Thus, the trial

> court cannot be faulted for following the instructions of this court on remand.
>
> Moreover, the trial court properly notified appellant of his mandatory PRC term at the May 26, 2010 sentencing hearing. The only flaw left for the trial court to correct was the notification in its sentencing entry. A defendant is not entitled to a resentencing hearing under these circumstances anyway. *State v. Qualls*, 131 Ohio St.3d 499, 2012–Ohio–1111, ¶ 23–24, 30. We overrule appellant's assignment of error.

*State v. Morris*, 2013 WL 614543, at *2.

Because the state appellate court held - twice - that Petitioner had no right under Ohio law to raise any issue at his re-sentencing hearing apart from the imposition of post release control, Petitioner cannot establish that his attorneys' failure to raise such issues - either at that hearing or on appeal - was constitutionally ineffective within the *Strickland* standard.

**Claims Four and Five:**

In Claims Four and Five, Petitioner alleges that he was denied the right to appeal and the right of access to the courts, thereby resulting in a manifest miscarriage of justice and cruel and unusual punishment in violation of the Eighth Amendment, because the courts of Ohio denied him a *de novo* sentencing hearing. These claims are without merit.

Petitioner was neither denied his right to appeal nor the right of access to the Courts. As attested by the lengthy procedural history recounted *supra*, Petitioner pursued numerous state court proceedings and appeals. The fact that Petitioner did not prevail on every issue or claim asserted by him in those proceedings is not dispositive; the Constitution does not guarantee a favorable outcome.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's request for an evidentiary hearing and for the appointment of counsel, *see* Petitioner's *Reply*, are **DENIED.**

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                 *s/ Norah McCann King*
                 Norah McCann King
                 United States Magistrate Judge

September 30, 2013